UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOSEPH KELLY,  )
            )
      Petitioner,  )
            )
   v.       )   Case No. 16-1093
            )
ROBERT MUELLER, Warden,  )
            )
      Respondent.  )

# ORDER AND OPINION

Now before the Court are Petitioner Kelly's Petition (Doc. 1) and Supplemental Petition (Doc. 16) for Writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, Kelly's Petitions (Docs. 1, 16) are DENIED and the Court declines to issue a Certificate of Appealability.

## BACKGROUND[1]

*(1) The Burglaries and Kelly's Trial*

On the evening of January 17, 2009, following a string of storage shed burglaries in Pontiac and Peru, Illinois, employees of Redwood Storage in Pontiac noticed a truck outside two different sheds at the facility and wrote down the license plate number. *People v. Kelly*, 2012 WL 7007751, at *1 (Ill. App. 4th Dist. 2012). When the employees investigated the area where the truck was seen they discovered cut locks on some of the sheds and notified the police. Deputies

---

[1] The following facts and procedural posture relevant to Kelly's § 2254 petition are drawn from the state court record. This Court will presume that the state court's factual determinations are correct for the purposes of habeas review as Kelly neither contests them nor points to clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Kidd v. Lemke,* 734 F.3d 696, 703 (7th Cir. 2013).

with the Livingston County Sheriff's Office identified David Przybyla as the owner of the truck and relayed the information to law enforcement officials in Ottawa. *Id.*

Later that night, Ottawa police officer Kevin O'Connor saw a truck matching the description provided by the Redwood employees at an Ottawa storage business, U-Store-It, but did not observe any evidence of burgled sheds. Officer O'Conner followed the truck and later initiated a traffic stop for a bad muffler, finding Przybyla in the driver seat and Kelly as his passenger. Kelly first told the officer that they were going to Handy Foods, but O'Conner told them that the store had already closed for the evening. Next, Kelly stated that they were going to Wal-Mart, but O'Conner pointed out that they were driving in the wrong direction. Although he found Kelly and Przybyla's story unbelievable, he did not see anything in the truck that warranted further investigation and let them go with a warning. *Id.* at *2–3.

On January 26, law enforcement officers from Ottawa, Livingston County, Princeton, LaSalle County, and Peru met in Ottawa to discuss Kelly's suspected role in storage shed burglaries around the area. Two parole officers were tasked with looking for stolen items from the Redwood burglaries when they visited Kelly at his house. After the parole officers were able to identify several of the items, a search warrant for Kelly's residence was obtained and executed on January 27, 2009. *Id.* at *3.

The search of Kelly's residence revealed numerous items reported stolen by the Redwood storage shed victims, and Kelly was arrested and taken to the Ottawa police station. Ottawa Police Officer Dave Gualandri was present during the search and thought Kelly had been drinking beer immediately before the search. Kelly's son, Joe Jr., was also arrested after officers found drugs in his pants pocket. At the police station, Livingston County Sheriff's Detective Tony Childress interviewed Kelly about the Redwood burglaries while Peru Police Officer

2

Dennis Hocking inquired about burglaries in LaSalle County. Kelly waived his *Miranda* rights and initially denied having any knowledge of the storage shed break-ins. However, he later admitted to burglarizing five storage sheds in Peru by breaking the locks and later replacing them with locks he bought at Menards. He also admitted to selling an antique beer can collection reported stolen from a Peru (LaSalle County) victim. Kelly further admitted to using bolt cutters to break into eight Redwood storage sheds with Przybyla. Kelly later wrote a summary of his oral admissions to the Peru and Redwood burglaries. *Id*. at *4.

The State of Illinois charged Kelly in the Livingston County Circuit Court with 11 counts of burglary. Four of the counts were later dismissed. In July 2009, Kelly's public defender filed a motion to suppress his confession as involuntarily made, but the trial court denied the motion in October 2009. Kelly's trial began shortly thereafter. The owners of seven Redwood storage sheds testified at trial. Six of the owners testified that the padlocks on their units had been removed; five of the owners testified regarding specific items missing from their units. The seventh shed owner testified that she rented a unit for her daughter, and her daughter told her that no lock was on the unit after Redwood employees informed her of the break-ins. However, defense counsel raised a hearsay objection to which the trial court sustained. Redwood employees also testified at trial. They recalled that of the several break-ins at Redwood from November to January, one unit that was broken into in December had a new lock placed on it after the old one was broken. *Id*. at *1–2.

The defense's case rested largely on the inconsistent and often contradictory testimony of Kelly's wife and his three children. The State then called Przybyla as a rebuttal witness. Przybyla, who previously pleaded guilty to the burglaries, testified that he was high on crack cocaine when he burgled the Redwood units. Contrary to his confession implicating both he and

3

Kelly, and his written statement that Kelly asked him for help selling the stolen items, Przybyla testified that he was the only one responsible for the burglaries. *Id*. at *6.

The jury found Kelly guilty of all seven counts of burglary. On January 12, 2010, the trial court denied the defense's post-trial motion and sentenced Kelly to seven concurrent terms of 18 years of incarceration. The sentencing was continued to March 15, 2010 to determine restitution, at which time the court ordered Kelly to pay $25,156.20 in restitution but *sua sponte* reduced the term of imprisonment to concurrent sentences of 16 years. *Id*. Kelly appealed.

*(2) Kelly's Direct Appeal*

On appeal, (different) counsel argued that the State failed to prove him guilty beyond a reasonable doubt as to the seventh burglary charge. The appellate court agreed and reversed Kelly's conviction on that count. Counsel also argued that the trial court erred in refusing to tender a lesser included theft instruction, that the trial court committed plain error in admitting other-crimes evidence of the LaSalle County burglaries, and that the trial court erred in not granting the defense's motions for mistrial when the jury heard about Kelly's prior police contacts. The appellate court disagreed and affirmed the convictions on the remaining six counts. *Id*. at *7–12. Kelly did not seek further review via a petition for leave to appeal ("PLA") to the Illinois Supreme Court.

*(3) Kelly's State Postconviction Petition*

Kelly filed a pro se postconviction petition in the Illinois trial court raising the following claims:

(1) appellate counsel was ineffective for not contesting trial counsel's failure to file a motion to suppress evidence;
(2) the trial court erred in failing to call Kelly's family members as witnesses at the hearing on defense counsel's motion to withdraw to testify about the conversation they allegedly overheard between defense counsel, the prosecutor, and the detective;

4

> (3) the trial court erred in failing to conduct a hearing on Kelly's pretrial contention that his lawyer was ineffective; and
>
> (4) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose a police report about one of the LaSalle County burglaries that contradicts the testimony offered at trial about those burglaries.

Docs. 25-5, 25-6. The trial court summarily dismissed the petition as frivolous and patently without merit. Doc. 25-7. Kelly appealed.

*(4) Kelly's Postconviction Appeal*

Kelly, with the assistance of (different) counsel, raised a single claim on appeal from the denial of his postconviction petition: trial counsel was ineffective under *United States v. Cronic*, 466 U.S. 648 (1984), for colluding with the prosecution to assure his conviction. Doc. 25-8. Specifically, Kelly alleged that family members saw and heard the prosecutor, defense counsel, and Detective Gualandri talk in the hallway outside the courtroom after the detective testified at the suppression hearing. Detective Gualandri allegedly asked if his testimony came out the way the attorneys wanted it, to which the prosecutor and defense counsel replied "I think we'll be alright." See *People v. Kelly*, 2015 WL 2170039, at *2 (Ill. App. 4th Dist. 2015). The appellate court addressed the issue as follows:

> Defendant's claim defense counsel was supposedly talking in the hallway with the prosecutor and agreed Detective Gualandri's testimony was acceptable does not arguably show he colluded or conspired to have defendant convicted. This single statement by defense counsel, even if true, would not arguably constitute any illegal conduct or unprofessional conduct by defense counsel. Defendant has failed to allege the gist of a constitutional claim to survive the first stage of his postconviction proceedings. Accordingly, we affirm the trial court's summary dismissal of defendant's *pro se* petition.

*Id*. at *3.

*(5) Kelly's Petition for Leave to Appeal*

Kelly filed a pro se petition for leave to appeal in the Illinois Supreme Court, raising the following claims:

5

(1) the trial court denied Kelly a fair hearing on defense counsel's motion to withdraw by refusing to allow Kelly's witnesses to testify about the conversation they allegedly overheard between defense counsel, the prosecutor, and a prosecution witness;
(2) the prosecution violated *Brady* by failing to disclose a police report about one of the LaSalle County burglaries that contradicts the testimony offered at trial about those burglaries, knowingly presented perjured testimony from a detective about those burglaries, and prejudiced Kelly's right to effectively cross-examine the detective;
(3) the trial court erred in allowing the State to introduce evidence of the LaSalle County burglaries; and
(4) the trial court should have excluded testimony about the LaSalle County burglaries as hearsay.

Doc. 25-10. The Illinois Supreme Court denied the PLA on November 25, 2015. Doc. 25-11.

Kelly also filed successive collateral attacks challenging various aspects of his conviction, all of which were denied or dismissed on procedural grounds. See generally Doc. 30, at 5.

*(6) Kelly's Federal Petition for Writ of Habeas Corpus*

On March 14, 2016, Kelly filed the instant pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, raising three claims:

(1) trial counsel was ineffective for colluding with the prosecution;
(2) the trial court denied Kelly's right to due process by refusing to let him present witnesses at the hearing on trial counsel's motion to withdraw; and
(3) the prosecution violated *Brady* by failing to disclose a police report about one of the LaSalle County burglaries that contradicts the testimony offered at trial about those burglaries.

Doc. 1. Kelly later attempted to supplement his Petition with an additional claim that the prosecution violated *Brady* by failing to disclose additional evidence demonstrating that the prosecution fabricated evidence of probable cause to secure the search warrant for his residence. Doc. 16. However, after Respondent informed the Court that Kelly's supplemental claim was pending in state court (Doc. 25), Kelly moved to withdraw the supplemental claim. Doc. 29. The Court allowed him to do so and ordered the Respondent to answer the remaining claims in Kelly's Petition. Text Order, September 20, 2016.

6

On October 18, 2016, Respondent filed its Answer to Kelly's Petition. Doc. 30. Therein, Respondent argues that Kelly procedurally defaulted each of his claims, no grounds exist to excuse Kelly's defaults, and no certificate of appealability should issue. This Order follows.

**LEGAL STANDARD**

"Under the Antiterrorism and Effective Death Penalty Act ('AEDPA'), [a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' *Snow v. Pfister*, 880 F.3d 857, 863–64 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)). However, "[t]his 'deferential standard of review applies only to claims that were actually adjudicated on the merits in State court proceedings.' " *Snow*, 880 F.3d at 864 (quoting *Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2015)).

In addition to the merits of a petitioner's claims, federal courts "must consider which claims have been procedurally defaulted." *Id*. There are two varieties of procedural default. First, procedural default occurs "where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements[.]" *Id*. (quoting *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). In order for procedural default to apply in this circumstance, the state court's rejection of a federal claim based on a procedural rule must be "both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). Second, "[a] state prisoner can procedurally default a federal claim if he fails to 'fairly present' it 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.' "

7

*Clemons*, 845 F.3d at 819 (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). Thus, "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which in Illinois requires the petitioner to "include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999)).

Finally, "[p]rocedural default may be excused ... where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.' " *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 386).

## DISCUSSION

*(1) Kelly Procedurally Defaulted his Federal Habeas Claims*

Kelly's first federal habeas claim is that trial counsel was ineffective for colluding with the prosecution. Doc. 1, at 6. This claim was not raised on direct appeal. Respondent asserts that Kelly also failed to raise this specific claim in his postconviction petition and in his postconviction PLA. See Doc. 30, at 7–8. Respondent is correct that Kelly's postconviction petition and PLA raised a similar but distinct claim that the trial court erred when it failed to allow his family members to testify at the hearing on defense counsel's motion to withdraw regarding the conversation they allegedly overheard between the detective, prosecutor, and defense counsel. While both Kelly's postconviction petition and his PLA make reference to defense counsel's alleged collusion with the prosecution, it is clear that Kelly's claims were directed at *what the trial court did or failed to do*, not what defense counsel did or failed to do. See Postconviction Petition, Doc. 25-5, at 7 (arguing that the "*trial court* failed to call

8

defendant[']s witnesses at trial counsel[']s motion to withdraw hearing") (emphasis added); PLA, Doc. 25-10, at 6 (arguing that "*Judge Bauknecht* deprived the defendant of a fair hearing" by not allowing Kelly to call witnesses at the hearing on defense counsel's motion to withdraw) (emphasis added).

Kelly did raise his claim that trial counsel was ineffective for colluding with the prosecution on appeal of the denial of his postconviction petition, and he attached the state appellate court's decision to his PLA. See Doc. 25-10, at 18. However, attaching the lower court opinion as an exhibit to his PLA is insufficient to fairly present that claim to the Illinois Supreme Court. See *Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."). Because Kelly failed to present his claim that trial counsel was ineffective for colluding with the prosecution in his PLA to the Illinois Supreme Court, the claim is procedurally defaulted. *Baldwin*, 541 U.S. at 29.

Kelly asserts in his second and third federal habeas claims that the trial court denied him due process by refusing to allow him to present witnesses at the hearing on defense counsel's motion to withdraw, and the prosecution violated *Brady* by failing to disclose a LaSalle County police report. However, neither of these claims were presented in Kelly's counseled appeal of the denial of his postconviction petition. See Appellant's Brief, Doc. 25-8, at 2. Because Kelly failed to fairly present these claims "in each appropriate state court," he has also procedurally defaulted his second and third federal habeas claims. *Baldwin*, 541 U.S. at 29; *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

Kelly later attempted to supplement his Petition with a fourth claim that the prosecution violated *Brady* by failing to disclose additional evidence demonstrating that the prosecution fabricated evidence of probable cause to secure the search warrant for his residence. Doc. 16. However, after Respondent informed the Court that Kelly's supplemental claim was pending in state court, Kelly moved to withdraw the supplemental claim. Doc. 29. The Court allowed him to do so and ordered the Respondent to answer the remaining claims in Kelly's Petition. Text Order, September 20, 2016. Yet Kelly later moved to reinstate that claim, arguing that although he raised the claim in his postconviction petition, the evidence he relies upon in support of the claim was not available when he filed his postconviction petition. Doc. 33 at 3, 5.

Kelly's fourth claim, so far as the Court can tell, alleges that the State fabricated evidence in order to obtain the search warrant because his parole officer's police report listed January 26, 2009 as the date that law enforcement officers met to discuss Kelly as a suspect in the burglary investigations, when the meeting really took place on January 27, 2009. See, e.g., Doc. 39, at 6. But Kelly raised this claim for the first time in a petition for relief from judgment, and then voluntarily dismissed his appeal of the trial court's adverse ruling. *Id*. at 10. Thus, even assuming Kelly properly brought this claim in his federal habeas petition, Kelly procedurally defaulted this claim by failing to fairly present it through a complete round of state court review. *Baldwin*, 541 U.S. at 29.

*(2) There are no Grounds to Excuse Kelly's Defaults*

Because Kelly procedurally defaulted on his claims, federal review of his defaulted claims is precluded unless he can establish cause for his default and actual prejudice as a result of the alleged violation of federal law, or show that failure to consider his claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The

fundamental miscarriage of justice exception to procedural default may be met when the petitioner points to new evidence that establishes his innocence. See *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013), *Schlup v. Delo*, 513 U.S. 298, 315 (1995).

Here, Kelly fails to establish cause for his default, resulting prejudice, or a fundamental miscarriage of justice. First, Kelly cannot show cause for his default of his original three claims because nothing prevented him from raising those claims at each level of review in the state court. And although Kelly alleges that his fourth claim relies upon newly discovered evidence, his voluntary dismissal of his state court appeal raising that issue precludes him from arguing that "some objective factor external to the defense impeded his efforts" to exhaust the claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Nor can he show prejudice from the defaults—his claims of error are frivolous and would not have tipped the scales in his favor given the overwhelming evidence of his guilt.

Similarly, Kelly cannot establish that he is actually innocent or that failure to consider his claims would otherwise result in a miscarriage of justice. He confessed to the burglaries. The items that he stole were found in his residence. And nothing in the record suggests that his defense counsel colluded with anyone to assure his conviction. To the contrary, the only evidence of collusion that can be found in the record before this Court is Kelly's own voluntary statement to law enforcement confessing to the burglaries. Kelly's myopic focus on a supposed conspiracy between his counsel, the prosecution, and law enforcement overlooks the key role he voluntarily played as the star witness against himself and the overwhelming evidence of his guilt.

## CERTIFICATE OF APPEALABILITY

Where a federal court enters a final order adverse to the petitioner, "the district court must issue or deny a certificate of appealability." 28 U.S.C. § 2254, Rule 11(a). To obtain a certificate, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a district court has denied a petition on procedural grounds, in order to obtain a certificate, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478. The Court declines to issue a certificate of appealability because it is not debatable that Kelly inexcusably failed to preserve his claims in state court and, thus, forfeited his right to adjudicate those claims in a federal habeas court.

## CONCLUSION

For the reasons set forth above, Petitioner Kelly's Petition (Doc. 1) and Supplemental Petition (Doc. 16) for Writ of habeas corpus under 28 U.S.C. § 2254 are DENIED, and the Court declines to issue a Certificate of Appealability.

This matter is now terminated.

Signed on this 2nd day of May, 2018.

s/ James E. Shadid  
James E. Shadid  
Chief United States District Judge